******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# SCOTT READY ET AL. *v.* TOWN OF NEW CANAAN
## (AC 47140)

Bright, C. J., and Alvord and Seeley, Js.*

*Syllabus*

The plaintiff homeowners appealed following the trial court's granting of the defendant town's motion for summary judgment in the plaintiffs' breach of contract action to recover for damage to their property that allegedly resulted from the defendant's failure to maintain its stormwater drainage system that runs through the plaintiffs' property. The plaintiffs contended that the court improperly determined that their claim was barred by the doctrine of governmental immunity pursuant to statute (§ 52-557n) and the common law because it sounded in tort rather than in contract. *Held*:

The trial court improperly granted the defendant's motion for summary judgment, as the court erroneously construed the plaintiffs' claim as alleging tortious conduct when, instead, it arose directly out of the defendant's alleged breach of a specific contractual provision in a right-of-way agreement it had entered into with the plaintiffs' predecessor in interest to maintain the stormwater drainage system that the defendant owned and operated.

Argued January 7—officially released May 6, 2025

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the action was withdrawn in part; thereafter, the court, *Clark, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiffs appealed to this court. *Reversed*; *further proceedings*.

*Matthew C. Mason*, for the appellants (plaintiffs).

*Adam J. DiFulvio*, with whom, on the brief, was *Thomas R. Gerarde*, for the appellee (defendant).

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Opinion*

ALVORD, J. The plaintiffs, Scott Ready and Veronica Ready, appeal from the judgment of the trial court granting the motion for summary judgment filed by the defendant, the town of New Canaan, as to the plaintiffs' complaint alleging breach of contract. On appeal, the plaintiffs claim that the court improperly rendered summary judgment in favor of the defendant on the ground that the plaintiffs' claim sounded in tort rather than in breach of contract and, therefore, was barred by the doctrine of governmental immunity. We reverse the judgment of the court.

The following procedural history is relevant to our resolution of this appeal. The plaintiffs commenced the present action in December, 2019. The plaintiffs subsequently withdrew three counts of the complaint, leaving only one count alleging breach of contract. Therein, the plaintiffs alleged in relevant part as follows. The plaintiffs are the owners of two parcels of land located at 57 and 59 Park Place in New Canaan. In or about 1950, the defendant constructed a stormwater drainage system as shown on a plan filed in the town clerk's office. The defendant both owns and operates the stormwater drainage system, which "collects and discharges surface stormwater through a pipe running from the South School Elementary School at the Gower School Extension northerly across Gower, Orchard and Douglas Roads and then down and through the backyards of the properties on the westerly side of Park Place, underneath Old Stamford Road and into the Bristow Bird Sanctuary and then exiting into a box culvert running into the existing brook system in the sanctuary; drainage pipes run from the individual lots into the covered piping as it passes underneath the backyards of the Park Place lots."

By agreement dated March 17, 1950, the plaintiffs' predecessor in title and others provided the defendant

with a "Grant of Right of Way for Public Storm Water Sewer Purpose" (right-of-way agreement). The right-of-way agreement gives the defendant "the right, privilege and easement to enter upon the said land of the [g]rantors for the purpose of laying, repairing, maintaining and replacing the said public storm water sewer . . . ." It also provides that the defendant "will use due care in constructing and maintaining the said public storm sewer . . . ." The defendant has had sole responsibility for maintaining the stormwater drainage system since 1950, and the plaintiffs never have interfered with or obstructed the stormwater drainage system. Since 1950, the defendant has approved the development of a large number of properties in the area served by the stormwater drainage system, resulting in "a substantial increase in the impervious surfaces draining water" into the system.

During a heavy rainstorm on October 11, 2007, the stormwater drainage system failed when it backed up. Two or more feet of water inundated portions of the plaintiffs' home, causing extensive damage, and many other properties sustained damage, including yard and basement flooding. The plaintiffs and others made claims against the defendant resulting from the damage caused by the 2007 rainstorm. The defendant thus was provided with notice of the stormwater drainage system's inadequacies and the risk of damage to homes served by the system following the 2007 rainstorm. The defendant also was on notice that there was a substantial likelihood that damage would occur to properties owned by the plaintiffs and others during heavy rainstorms in the event that the defendant failed to address the deficiencies.

The plaintiffs further alleged that the defendant caused, created, and/or failed to correct a blockage in the stormwater drainage system and to ensure that the system functions properly and is adequate to remove

the volume of stormwater occurring during heavy rain events. The defendant took the following intentional and affirmative actions: "(i) constructing the stormwater drainage system; (ii) constructing and continuing to utilize the stormwater drainage system, which is insufficiently sized and inadequate to handle the volume of stormwater discharged into the system during significant rain events; (iii) deciding not to take necessary measures to correct the problems and deficiencies in the stormwater drainage system, including to ensure that it is reasonably free of trash, debris, excessive vegetation, sediment, and other obstacles that would retard the flow of water through the system, notwithstanding being on notice of the need to address such problems; (iv) deciding not to make the necessary changes to or improvements in the stormwater drainage system to protect the plaintiffs (and others) from harm that is substantially certain to occur during significant rain events when the system is unable to handle large volumes of stormwater; (v) failing to honor its obligations under the [right-of-way] agreement; and (vi) approving building in the areas served by the stormwater drainage system, which served to increase the volume of stormwater runoff into the stormwater drainage system to the point where it cannot function as intended."

During a heavy rainstorm on June 28, 2018, the stormwater drainage system again failed and backed up, resulting in flooding that caused substantial damage to the plaintiffs' home and property. Having knowledge of the 2007 rainstorm, the defendant affirmatively chose not to address the system's deficiencies, including that the drainage pipe was insufficient in size and needed to be kept free from obstructions. Thus, the defendant knowingly caused and directed stormwater onto the plaintiffs' property, which was intended to flow through the system.

The plaintiffs live in fear that the stormwater drainage system will fail, causing damage to their home and property. They have spent considerable amounts of money to install sumps with flood control alarmed pumps and have taken other steps to try to protect their property. On the basis of the foregoing, the plaintiffs claim, the defendant has breached its obligation under the right-of-way agreement by failing to " 'use due care in constructing and maintaining the said public storm sewer,' " and the plaintiffs have suffered damages.

In their complaint, the plaintiffs requested damages, costs, attorney's fees, and "[a]n order compelling the defendant to regularly and properly inspect, maintain, repair, and improve the stormwater drainage system, consistent with its obligations, including under the [right-of-way] agreement."

On February 18, 2020, the defendant filed an answer and special defenses. By way of its second special defense to the breach of contract count, the defendant alleged that the plaintiffs' claims are barred by the doctrine of governmental immunity pursuant to both common law and General Statutes § 52-557n.

On January 22, 2021, the defendant filed a motion for summary judgment. The defendant's motion was accompanied by a memorandum of law and attached exhibits. In addressing the plaintiffs' breach of contract claim, the defendant argued that the plaintiffs' allegations sounded in tort rather than in breach of contract, and, therefore, their claim was barred by the doctrine of governmental immunity. On June 15, 2023, the plaintiffs filed a memorandum of law in opposition to the motion for summary judgment, in which they argued that their breach of contract claim arose from the right-of-way agreement and the defendant's obligations thereunder. The plaintiffs also filed an affidavit and attached exhibits. On July 12, 2023, the defendant filed a reply brief. The court heard oral argument on July 31, 2023.

On November 8, 2023, the court, *Clark, J.*, granted the defendant's motion for summary judgment. The court stated: "[A] plain reading of the plaintiffs' complaint reveals there is no genuine dispute of material fact that the claim is for injuries allegedly sustained to the plaintiffs' property as a result of the defendant's failure to properly inspect or maintain the stormwater drainage system. The plaintiffs have simply recast their tort claims as a contract claim in an attempt to circumvent well settled Connecticut case law, which provides governmental immunity to municipalities and [their] employees for discretionary acts." The court next determined that no exception to governmental immunity applied. Accordingly, the court concluded that the defendant was entitled to summary judgment. This appeal followed.

On appeal, the plaintiffs claim that the trial court improperly determined that their claim was barred by the doctrine of governmental immunity. Specifically, they contend that their breach of contract claim arose directly from the breach of the express provision of the right-of-way agreement. They further argue that they sought contract damages, including specific performance, rather than tort damages.

Before we turn to the plaintiffs' claim on appeal, we begin by setting forth the standard of review applicable to a trial court's decision to grant a motion for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A party moving for summary judgment is held to a strict standard. . . . To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . .

Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Cyr* v. *VKB, LLC*, 194 Conn. App. 871, 877, 222 A.3d 965 (2019).

We next set forth the substantive law regarding the liability of municipalities. "Although, at common law, a municipality generally was immune from liability for any tortious acts, our Supreme Court has long recognized that governmental immunity may be abrogated by statute. . . . [Section] 52-557n (a) (1) provides in relevant part: Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . This language clearly and expressly abrogates the traditional common-law doctrine in this state that municipalities are immune from suit for torts committed by their employees and agents. . . .

"Subdivision (2) of § 52-557n (a), however, contains two significant limitations to the statutory abrogation of governmental immunity. [One exception] provides as follows: Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. General Statutes § 52-557n (a) (2) (B). The statutory scheme of § 52-557n, accordingly, distinguishes between discretionary and ministerial acts, with liability generally attaching to a municipality only for negligently performed ministerial acts, not for negligently performed discretionary acts."[1] (Citations omitted; internal quotation marks omitted.) *Washburne* v. *Madison*, 175 Conn.

---

[1] "Even if a municipal defendant's conduct is discretionary in nature, our courts have identified three exceptions to discretionary act immunity. Each

App. 613, 622–23, 167 A.3d 1029 (2017), cert. denied, 330 Conn. 971, 200 A.3d 1151 (2019).

In determining whether a claim sounds in tort or in breach of contract, our Supreme Court has stated that "[t]he fundamental difference . . . lies in the nature of the interests protected. . . . The duties of conduct [that] give rise to [a tort action] are imposed by the law, and are based primarily [on] social policy, and not necessarily [on] the will or intention of the parties. . . . Furthermore, other courts have held that, when a plaintiff seeks to recover damages for the breach of a statutory duty, such an action sounds in tort. . . .

"On the other hand, [c]ontract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of [the] conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract. . . . In short, [a]n action in contract is for the breach of a duty arising out of a contract; an action in tort is for a breach of duty imposed by law." (Internal quotation marks omitted.) *Canner* v. *Governors Ridge Assn., Inc.*, 348 Conn. 726, 743, 311 A.3d 173 (2024). "The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the

of these exceptions represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force. . . . First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure. . . . Second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws. . . . Third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." (Internal quotation marks omitted.) *Northrup* v. *Witkowski*, 175 Conn. App. 223, 234, 167 A.3d 443 (2017), aff'd, 332 Conn. 158, 210 A.3d 29 (2019). Because we conclude that the doctrine of discretionary governmental immunity does not bar the plaintiffs' claim, we need not address the exceptions thereto.

agreement by the other party, and damages." *Meyers* v. *Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291, 87 A.3d 534 (2014). "It is true, of course, that out of a contractual relationship a tort liability, as in negligence, may arise." (Internal quotation marks omitted.) *Gazo* v. *Stamford*, 255 Conn. 245, 263, 765 A.2d 505 (2001).

Finally, in our review of the plaintiffs' claim, we must evaluate the allegations set forth in the plaintiffs' complaint. "The interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . Furthermore, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory [on] which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Emphasis omitted; internal quotation marks omitted.) *Carpenter* v. *Daar*, 346 Conn. 80, 128, 287 A.3d 1027 (2023). "[I]n determining the nature of a pleading filed by a party, we are not bound by the label affixed to that pleading by the party." (Internal quotation marks omitted.) *Manere* v. *Collins*, 200 Conn. App. 356, 366, 241 A.3d 133 (2020).

Viewing the allegations of the complaint as a whole and in the light most favorable to the plaintiffs as the nonmoving parties, we are convinced that the plaintiffs have alleged a claim for breach of a contractual duty.

Specifically, the plaintiffs alleged the existence of the right-of-way agreement, entered into by the plaintiffs' predecessor in interest and the defendant. Pursuant to that agreement, the defendant was provided with "[t]he right, privilege and easement to enter upon the said land of the [g]rantors for the purpose of laying, repairing, maintaining and replacing the said public storm water sewer . . . ." The right-of-way agreement states that "[i]t is further agreed that the [g]rantors shall not be assessed for any front foot or other proportionate charge or for any part of the cost of construction, extension or maintenance of the public storm water sewer hereby permitted except such as may be assessed against them by the [t]own of New Canaan under its general tax levy; and that the [g]rantee will use due care in constructing and maintaining the said public storm water sewer, to restore the surface of the land where the said drain is located to substantially its same condition prior to such construction or maintenance work and without cost to the [g]rantors." The plaintiffs alleged that they have never interfered with or obstructed the stormwater drainage system and that the defendant breached an express provision of the right-of-way agreement requiring it to use " 'due care in constructing and maintaining the said public storm sewer . . . .' " Specifically, the plaintiffs alleged that the defendant constructed the stormwater drainage system but did not thereafter correct problems and deficiencies within the system, including keeping the system clear of debris and sediment, declining to make improvements to the system, and increasing the volume of stormwater runoff by approving buildings within the area served by the system.

The plaintiffs alleged that the defendant's failure to maintain the stormwater drainage system resulted in the system failing and backing up during a heavy rainstorm, which caused substantial damage to their property. The plaintiffs sought damages, costs, attorney's

fees, and specific performance in the form of "[a]n order compelling the defendant to regularly and properly inspect, maintain, repair, and improve the stormwater drainage system, consistent with its obligations, including under the [right-of-way] agreement."

Because the plaintiffs' claim arises directly out of the defendant's alleged breach of a specific contractual provision contained within the right-of-way agreement, the plaintiffs' claim sounds in breach of contract rather than in tort. More specifically, the duty alleged to have been breached is found in the right-of-way agreement and is not a duty imposed by law.

Moreover, we find it persuasive that the plaintiffs sought specific performance. See, e.g., *Gazo* v. *Stamford*, supra, 255 Conn. 265 (considering recovery sought in analyzing whether claim sounded in contract or in tort). "[T]he specific performance remedy is a form of injunctive decree in which the court orders the defendant to perform the contract." (Internal quotation marks omitted.) *Gager* v. *Gager & Peterson, LLP*, 76 Conn. App. 552, 560, 820 A.2d 1063 (2003); see also 71 Am. Jur. 2d 15, Specific Performance § 1 (2023) ("[t]he purpose of [specific performance] is to give the one who seeks it the benefit of the contract by compelling the other party to the contract to do what he or she has agreed to do—perform the contract on the precise terms agreed upon by the parties").

The decisions relied on by the defendant and the trial court, *Gazo* v. *Stamford*, supra, 255 Conn. 245, and *Brusby* v. *Metropolitan District*, 160 Conn. App. 638, 127 A.3d 257 (2015), are distinguishable. In *Gazo* v. *Stamford*, supra, 247, the plaintiff claimed injuries arising out of a slip and fall on icy property and sought to recover from an independent contractor, who had been hired to maintain the property in a safe condition. The plaintiff sought recovery as a third-party beneficiary of

the contract between the possessor of the land and the independent contractor, and he sought recovery for physical and mental pain and suffering, lost wages and medical bills. Id., 265. Our Supreme Court, in considering whether the trial court had properly struck that count of the complaint alleging that the plaintiff was a third-party beneficiary, examined the plaintiff's allegations of liability and damages and concluded that he was seeking "compensation for injuries suffered from a fall on ice and snow, purportedly because of [the contractor's] negligence." Id., 264. The court concluded that the plaintiff was not seeking damages for breach of the contract but, rather, damages arising out of the contractor's negligence in the performance of the contract. Id. Under these circumstances, the court concluded that "where . . . the plaintiff's allegations of both liability and damages sound in tort, and the only practical effect of permitting a contract claim to lie would be to extend the tort statute of limitations, and common sense strongly counsels otherwise, the plaintiff may not be permitted to transform his tort claim into a contract claim merely by alleging that it is such a claim." Id., 266.

In *Brusby* v. *Metropolitan District*, supra, 160 Conn. App. 641, the plaintiff homeowner brought an action against the defendant, a municipal corporation that provides potable water and sewerage services to its customers. The plaintiff alleged that raw sewage had entered and flooded her basement on two occasions as a result of the defendant's negligence, including the defendant's failure to properly install backflow safety features and to properly maintain the sewer system. Id., 641–42. In her complaint, the plaintiff set forth a count alleging breach of contract, which she contended was viable as an independent claim arising from the fact that she had paid the defendant for its sewerage

services. Id., 644. The court rendered summary judgment in favor of the defendant on the breach of contract count on the ground that the allegations sounded in tort and, accordingly, the statute of limitations for tort actions applied to bar the plaintiff's claim. See id., 644–45. On appeal, this court agreed with the trial court that the plaintiff's claim sounded in tort because she had alleged personal injury and sought compensation for emotional distress and medical conditions that she claimed were caused by exposure to the raw sewage. See id., 668–69. This court explained that her tort claim could not be recast as a contract claim solely to gain the benefit of the longer statute of limitations. See id., 669.

*Gazo* and *Brusby* are distinguishable in that both cases involved personal injury claims arising out of negligence, which the plaintiffs attempted to recast into contract claims. Furthermore, the plaintiffs in both cases sought to recast their contract claims as a way to take advantage of the longer statute of limitations afforded contract claims. Additionally, both plaintiffs sought tort damages. *Gazo* is also distinguishable because the plaintiff in that case sought to impose liability on the ground that his status as a business invitee rendered him a third-party beneficiary of a contract between a landowner and an independent contractor. See *Gazo* v. *Stamford*, supra, 255 Conn. 266–67. The court explained that it "defies common sense and reality to think that, despite the plaintiff's allegation, [the possessor of land and the independent contractor], when they formed their contract, actually intended that every passerby on the sidewalk would be a party to that contract." Id., 266.

Our Supreme Court's recent decision in *Canner* v. *Governors Ridge Assn.*, *Inc.*, supra, 348 Conn. 726, is instructive. In that case, the court considered the plaintiff's allegations that the defendant condominium association had violated a continuing, contractual duty set

forth in the defendant's bylaws to maintain, repair, or replace common elements by failing to repair foundations supporting their condominium units. See id., 746–47. Specifically, the plaintiffs alleged a violation of § 5.2 (b) of the bylaws, which provided in relevant part: "All maintenance and repairs of and replacements to [c]ommon [e]lements and [l]imited [c]ommon [e]lements . . . shall be made by the [e]xecutive [b]oard and be charged to all [u]nit [o]wners as a [c]ommon [e]xpense . . . ." (Internal quotation marks omitted.) Id., 734 n.10. The Supreme Court concluded that § 5.2 "imposes a contractual duty to maintain common elements . . . ." Id., 746. The court further stated that "[t]he fact that the defendant possesses discretion with respect to the maintenance of uninsured common elements . . . does not insulate the exercise of that discretion from judicial review. . . . To conclude otherwise would . . . permit the defendant to forgo even reasonable repairs without recourse to the unit owners, leaving them without the ability to seek judicial relief in the event the decision of the defendant exceeds its discretion." (Citations omitted.) Id., 747–48. Accordingly, the court concluded that the plaintiff's claims that the defendant had breached its contractual duty were timely under the statute of limitations for contract actions. See id., 746.

In the present case, as in *Canner*, the defendant's liability arises out of a specific contractual obligation. That the contractual language contemplates some discretion in fulfilling that obligation does not transform the plaintiffs' cause of action alleging breach of that obligation into a tort action alleging negligently performed discretionary acts.

For the foregoing reasons, we conclude that the plaintiffs' allegations sound in breach of contract rather than

in tort.[2] Accordingly, the court erred in construing the plaintiffs' claim as alleging tortious conduct, to which governmental immunity would apply. Therefore, the court improperly rendered summary judgment in favor of the defendant.

The judgment is reversed and the case is remanded with direction to deny the defendant's motion for summary judgment and for further proceedings according to law.

In this opinion the other judges concurred.

---

[2] We note that, during oral argument before this court, the defendant's counsel conceded that, were the defendant a private party rather than a municipality, the plaintiffs' claim properly would sound in breach of contract. We fail to see why the defendant should be relieved of its contractual commitments simply because it is a municipality.