******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## VICTOR DEMARIA *v.* CITY OF BRIDGEPORT
## (SC 20359)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn and Ecker, Js.

*Syllabus*

Pursuant to statute (§ 52-174 (b)), "any party offering in evidence a signed report . . . for treatment of any treating physician . . . may have the report . . . admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of such treating physician . . . and that the report . . . [was] made in the ordinary course of business."

The plaintiff sought to recover damages, pursuant to the municipal defective highway statute (§ 13a-149), from the defendant city for personal injuries he sustained when he fell on a city sidewalk. After his fall, the plaintiff received treatment for certain symptoms from a number of medical professionals, including his primary care provider, V, at a Veterans Administration hospital. V ultimately wrote a final report for the plaintiff's medical file, in which she concluded that his injuries, namely, a permanent disability of neuropathy and permanent weakness in his left hand, were caused with a reasonable degree of medical certainty by the fall. Prior to trial, the city filed a motion in limine to preclude the admission of V's treatment records and reports, as well as her medical opinions and conclusions, on the ground that they were inadmissible under § 52-174 (b) because the city would have no opportunity, either at a deposition or at trial, to cross-examine V, who was precluded from testifying by virtue of the applicable federal regulation (38 C.F.R. § 14.808 (2017)) prohibiting Department of Veterans Affairs personnel from providing testimony in certain legal proceedings. The trial court denied that motion, and, on the first day of trial, the city moved to preclude the admission of V's final report on the ground that V, a physician assistant, was not competent to render an opinion on the permanency of the plaintiff's injuries. The court denied that motion, as well. The jury returned a verdict for the plaintiff, and the trial court rendered judgment in accordance with the verdict. The city thereafter appealed to the Appellate Court, which reversed and remanded the case for a new trial, concluding that the trial court had improperly admitted the plaintiff's medical records under *Rhode* v. *Milla* (287 Conn. 731), in which this court held that certain medical bills were inadmissible under § 52-174 (b) because the defendant did not have an adequate opportunity to cross-examine the treating health care provider. On the granting of certification, the plaintiff appealed to this court. *Held* that the Appellate Court incorrectly concluded that the plaintiff's medical records and V's final report, which were made and maintained in the ordinary course of the business of diagnosing, treating and caring for the plaintiff, were inadmissible under § 52-174 (b) on the ground that the city was unable to cross-examine V: § 52-174 (b), which was enacted to avoid the expense and delay caused by procuring the testimony of a treating physician, permits the admission of medical reports, which otherwise would constitute inadmissible hearsay, under the hearsay exception for business records, the statutory (§ 52-180) business records exception to the hearsay rule, by expressly providing that business records are not rendered inadmissible by virtue of a party's failure to produce the author or to show that the author was unavailable, specifically contemplates that the opponent of the proffered evidence need not be given the opportunity to cross-examine the author of the record, and, to the extent that *Rhode* and its progeny, including *Milliun* v. *New Milford Hospital* (310 Conn. 711), suggested that an opportunity for cross-examination of the author of a medical record prepared for purposes of the diagnosis, treatment or care of a patient is an absolute prerequisite for the admission of such record, this court disavowed that proposition; moreover, the city did not claim or present any evidence in the trial court that V's final report was prepared in contemplation of litigation, and the mere fact that the final report contained V's opinion on causation and the permanency of

the plaintiff's injuries did not establish that the report was not prepared for purposes of the diagnosis, treatment or care of the plaintiff.

Argued June 12, 2020—officially released June 29, 2021*

*Procedural History*

Action to recover damages for personal injuries sustained by the plaintiff as a result of an allegedly defective highway, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Hon. William B. Rush*, judge trial referee, denied the defendant's motion to preclude certain evidence; thereafter, the case was tried to the jury; verdict for the plaintiff; subsequently, the court, *Hon. William B. Rush*, judge trial referee, denied the defendant's motion to set aside the verdict and, exercising the powers of the Superior Court, rendered judgment in accordance with the verdict, from which the defendant appealed to the Appellate Court, *Lavine*, *Sheldon* and *Prescott*, *Js.*, which reversed the trial court's judgment and remanded the case for a new trial, and the plaintiff, on the granting of certification, appealed to this court. *Reversed; judgment directed.*

*Brenden P. Leydon*, with whom, on the brief, was *John H. Harrington*, for the appellant (plaintiff).

*Eroll V. Skyers*, assistant city attorney, for the appellee (defendant).

*David N. Rosen* filed a brief for the Connecticut Veterans Legal Center as amicus curiae.

*Opinion*

ROBINSON, C. J. This certified appeal requires us to consider the extent to which a medical record is admissible as evidence pursuant to General Statutes § 52-174 (b)[1] when that record contains an expert opinion and the author cannot be subject to cross-examination. The plaintiff, Victor DeMaria, appeals, upon our grant of his petition for certification,[2] from the judgment of the Appellate Court, which reversed the judgment of the trial court rendered in accordance with a jury verdict awarding the plaintiff damages for injuries stemming from his fall on a sidewalk of the defendant, the city of Bridgeport. See *DeMaria* v. *Bridgeport*, 190 Conn. App. 449, 451, 211 A.3d 98 (2019). On appeal, the plaintiff claims that the Appellate Court incorrectly determined that the trial court should not have admitted into evidence a medical record containing the medical opinion of the plaintiff's treating physician assistant, Miriam Vitale, pursuant to § 52-174 (b), when the defendant was unable to cross-examine Vitale. We agree with the plaintiff and, accordingly, reverse the judgment of the Appellate Court.

The Appellate Court's opinion sets forth the following background facts and procedural history. "On March 27, 2014, the plaintiff tripped while walking on the sidewalk adjacent to Fairfield Avenue in Bridgeport, when he caught his foot on a raised portion of the sidewalk. As a result, the plaintiff fell forward onto his face and hands, causing him to suffer abrasions to his nose and hands, a broken nose and a broken finger on his left hand. Approximately two months after his fall, the plaintiff began to experience a burning sensation in his left arm, weakened grip strength and limited range of motion in his left hand. He sought medical attention at the hospital, where he consulted neurologists, radiologists, physical therapists, occupational therapists and his primary care provider, Vitale, concerning his symptoms. After the plaintiff received approximately two and one-half years of treatment, including extensive physical and occupational therapy, Vitale wrote a document for his medical file titled 'Final Report of Injury,' in which she opined that the plaintiff had reached the maximum potential use of his left hand, retained only 47 percent of his former grip strength and continued to experience pain and neuropathy in that hand. She further concluded that 'these injuries were caused with a reasonable degree of medical certainty by the March 27, 2014 accident, [specifically], [to the] left [fourth] and [fifth] digit, a permanent disability of neuropathy, as well as left hand permanent weakness occurring as a result of [the] fall and impact of [the plaintiff] during the fall.'

"The plaintiff brought this action against the defendant for economic and noneconomic damages under General Statutes § 13a-149,[3] alleging that his injuries

had been caused by the defendant's failure to remedy a defect in its sidewalk, which it knew or should have known would cause injuries to pedestrians. Prior to trial, the defendant filed a motion in limine to preclude the admission of Vitale's treatment records, treatment reports, findings, conclusions, and medical opinions as evidence at trial. The defendant argued that Vitale's medical records were inadmissible under § 52-174 (b) because the defendant would have no opportunity to cross-examine her, either at a deposition or at trial, because she was prevented from testifying by 38 C.F.R. § 14.808.[4] The plaintiff responded that precluding the medical records would result in an injustice to him merely because his treating physician was made unavailable to testify by federal regulation and that that is the very type of injustice that § 52-174 (b) was intended to remedy. After a hearing, the court denied the defendant's motion in limine." (Footnote altered; footnote in original.) *DeMaria* v. *Bridgeport*, supra, 190 Conn. App. 452–53.

On the first day of trial, the defendant filed another motion in limine, seeking to preclude Vitale's "Final Report of Injury" (final report) on the ground that Vitale was not competent to render an opinion on the permanency of the plaintiff's injuries. The trial court also denied that motion.

"Following a three day trial, the jury returned a verdict for the plaintiff, awarding him $15,295.47 in economic damages and $77,500 in noneconomic damages, for a total award of $92,795.47. The court denied the defendant's subsequent motion to set aside the verdict, in which it argued, inter alia, that the trial court erred in admitting the medical records [prepared] by Vitale because the defendant had had no opportunity to cross-examine her at a deposition or at trial in violation of its common-law right to cross-examination." Id., 453.

The defendant then appealed from the judgment of the trial court to the Appellate Court, claiming that "[t]he trial court should have either excluded the entirety of . . . Vitale's reports, records, and opinions from evidence or, at the very least, excluded the opinions contained in her records and reports" because the defendant was unable to depose or cross-examine Vitale. *DeMaria* v. *Bridgeport*, Conn. Appellate Court Briefs & Appendices, January Term, 2019, Defendant's Brief pp. 3–4. The Appellate Court concluded that the trial court had improperly admitted the medical records under *Rhode* v. *Milla*, 287 Conn. 731, 744, 949 A.2d 1227 (2008), in which this court held that certain medical bills were inadmissible under § 52-174 (b) because the defendant did not have an adequate opportunity to cross-examine the treating health care provider. See *DeMaria* v. *Bridgeport*, supra, 190 Conn. App. 455–59. The Appellate Court further concluded that this error was harmful. Id., 462. Accordingly, the Appellate Court

reversed the judgment of the trial court and remanded the case for a new trial. Id. This certified appeal followed.[5] See footnote 2 of this opinion.

On appeal, the plaintiff claims that the Appellate Court incorrectly determined that his medical records were inadmissible under § 52-174 (b) because the defendant was unable to cross-examine Vitale.[6] Specifically, he contends that there is no "absolute right of cross-examination in civil cases" and that the medical records fall into the category of admissible hearsay evidence that does not require cross-examination because it is inherently reliable and trustworthy. (Internal quotation marks omitted.) The plaintiff also contends that the Appellate Court improperly relied on dictum in *Rhode* v. *Milla*, supra, 287 Conn. 731, to support its decision and that, if this court determines that *Rhode* is binding, we should overrule that decision. Finally, the plaintiff contends that the defendant is barred from seeking relief because it did not adequately pursue its opportunity to cross-examine Vitale by following the procedures outlined in 38 C.F.R. § 14.808. See footnote 4 of this opinion.

In response, the defendant concedes in its brief to this court that all of the plaintiff's medical records were admissible pursuant to § 52-174 (b) "save one," namely, the final report that Vitale authored.[7] The defendant contends that this medical record was inadmissible because it contains Vitale's expert opinion, it was prepared for use in this litigation and the defendant did not have an opportunity to cross-examine Vitale either in a deposition or at trial. The defendant further contends that the trial court's error was harmful.

We conclude that the medical records that were created in the ordinary course of diagnosing, caring for and treating the plaintiff were admissible pursuant to § 52-174 (b), even if there was no opportunity to cross-examine the records' author. Because the defendant made no claim and presented no evidence at trial that Vitale prepared the final report exclusively for use in litigation, rather than in the ordinary course of providing care and treatment to the plaintiff, and the trial court accordingly made no finding on that point, we conclude that the Appellate Court incorrectly determined that the plaintiff's medical records were inadmissible.

Whether medical records prepared by a treating health care provider in the ordinary course of providing care and treatment to the plaintiff are admissible pursuant to § 52-174 (b) when the defendant is unable to cross-examine the provider is a question of statutory interpretation to which we apply well established rules of construction and over which we exercise plenary review. See General Statutes § 1-2z (plain meaning rule); *Canty* v. *Otto*, 304 Conn. 546, 557–58, 41 A.3d 280 (2012) (general rules of construction aimed at ascertain-

ing legislative intent).

We begin with the text of § 52-174 (b), which provides in relevant part that, in certain civil actions, "any party offering in evidence a signed report . . . for treatment of any treating physician . . . may have the report . . . admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of such treating physician . . . and that the report . . . [was] made in the ordinary course of business. . . ."

Although such medical reports would ordinarily be inadmissible hearsay, § 52-174 (b) permits their admission under the hearsay exception for business records. Accordingly, we have held that the provisions of General Statutes § 52-180,[8] and the general legal principles that govern the admission of business records; see Conn. Code Evid. § 8-4;[9] apply to medical records that fall within the scope of § 52-174 (b).[10] See *Struckman* v. *Burns*, 205 Conn. 542, 548, 534 A.2d 888 (1987) (because medical records are admissible as " 'business entries,' " § 52-180 (b) applies to them). "The initial rationale for the [business records] exception was that, although hearsay, business records [are] trustworthy because their creators had relied on the records for business purposes." (Internal quotation marks omitted.) *Jenzack Partners, LLC* v. *Stoneridge Associates, LLC,* 334 Conn. 374, 390, 222 A.3d 950 (2020).

"The statute [allowing the admission of business records][11] expressly provides that business entries [that] are admissible under it shall not be rendered inadmissible by reason of the failure to produce as witnesses the persons who made them. It contemplates, therefore, *that there need be no opportunity afforded to cross-examine those who made the entries* if as a matter of fact the entries are admissible as business entries under its provisions." (Emphasis added; footnote added.) *D'Amato* v. *Johnston,* 140 Conn. 54, 62, 97 A.2d 893 (1953); see also *United States* v. *New York Foreign Trade Zone Operators, Inc.,* 304 F.2d 792, 795–96 (2d Cir. 1962) ("[although] hearsay, business records were believed to have been prepared by methods and under circumstances that made them more trustworthy than other hearsay, and therefore business records could safely be admitted into evidence as tending to prove the transaction recorded without the [truth testing] provided by a cross-examination of the maker or keeper of the records"); *Troyan* v. *Reyes,* 367 Ill. App. 3d 729, 733, 855 N.E.2d 967 (2006) ("In order to fulfill the foundational requirements of a business record, it is not necessary that the author or creator of the record testify or be cross-examined about the contents of the record. . . . [T]he circumstantial probability of their trustworthiness is a practical substitute for cross-examination of the individual making the entries." (Citation omitted; internal quotation marks omitted.)); cf. *Struckman* v. *Burns,* supra, 205 Conn.

550–51 ("hospital records, including medical opinions contained therein relevant to diagnosis . . . may be admitted into evidence without the testimony of the persons who made the entries even in a criminal proceeding, and . . . this procedure does not violate a defendant's right of cross-examination" (citation omitted)); *State* v. *Jeustiniano*, 172 Conn. 275, 280, 374 A.2d 209 (1977) ("The defendants also assign error to the admission of the hospital record on the ground that they were denied an opportunity to cross-examine the persons who made the entries. This claim is without foundation in the law. The legislature, in General Statutes § 4-104, has specifically made hospital records admissible without supporting testimony.").

Indeed, the very purpose for which § 52-174 (b) was enacted was to avoid the delay and expense that obtaining the testimony of the author of the medical record would entail. As this court stated in *Lopiano* v. *Lopiano*, 247 Conn. 356, 752 A.2d 1000 (1998), § 52-174 (b) "serves the purpose of getting medical evidence before the jury in the absence of the treating physician. . . . The need for this statutory exception allowing for a substitute for testimony was clearly driven by economics due to the necessity for medical evidence in every personal injury action for damages." (Citation omitted.) Id., 383; see also *Bruneau* v. *Seabrook*, 84 Conn. App. 667, 671–72, 854 A.2d 818 ("[t]he rationale for allowing self-authenticating documents from physicians in personal injury . . . actions is to avoid trial delays due to the difficulty in scheduling doctors' appearances; especially because in the majority of cases the physician's testimony is consistent with his treatment report" (internal quotation marks omitted)), cert. denied, 271 Conn. 930, 859 A.2d 583 (2004).

Nevertheless, we recognize that, notwithstanding this case law, this court has, on a number of occasions, suggested that medical records are *not* admissible pursuant to § 52-174 (b) if the defendant is unable to cross-examine the author. In *Struckman* v. *Burns*, supra, 205 Conn. 544, the trial court admitted certain medical records prepared by several of the plaintiff's out-of-state chiropractors and dentists. The defendant contended that the statute applied only to medical practitioners within the state, as out-of-state practitioners were beyond the reach of the court's subpoena power. Id., 545. This court observed that the statutory text did not require the practitioner to be available "in the jurisdiction"; id., 546; and that, during the debate on the proposed legislation, the legislature expressly considered out-of-state practitioners to be covered by the statute. Id., 547–48. The court concluded that "§ 52-174 (b) characterizes such medical reports as 'business entries' and the legislature in . . . § 52-180 (b) has provided that such business entries ought not be rendered inadmissible either by a party's failure to produce the person or persons making the writing or by a party's

failure to show that such persons are unavailable as witnesses. . . . [Section] 52-174 (b) permits the admission of the medical reports and bills of nonresident treating medical practitioners even if they are beyond the subpoena power of our courts, and cannot be called to testify at a trial." Id., 548.

The defendant in *Struckman* also argued that, if § 52-174 (b) allows the admission of medical records even if the defendant is unable to cross-examine the author, the statute would violate his right to cross-examination under the federal and state constitutions. Id., 548–49. Specifically, although the defendant conceded that the hospital bills that had been admitted as evidence were admissible because they were prepared in the ordinary course of business and, therefore, were presumptively reliable, he contended that the medical reports that had been admitted "were not prepared in the ordinary course of business, but for litigation" and, therefore, were not entitled to the presumption of reliability. Id., 551. This court observed that, under the common law, there is an "absolute right" to cross-examination in civil cases. (Internal quotation marks omitted.) Id., 549. This court declined, however, to consider "whether the provisions of our federal and state constitutions against depriving a person of his property without due process of law afford some protection against legislative restriction of cross-examination in civil cases" because § 52-174 (b) "does not preclude taking the deposition of a nonresident medical practitioner whose report or bill may be offered into evidence at a trial" and, therefore, "does not significantly curtail the right of cross-examination . . . ." Id.

In *Rhode* v. *Milla*, supra, 287 Conn. 744, this court construed *Struckman* to require cross-examination as a prerequisite to admitting medical records pursuant to § 52-174 (b) under the particular circumstances presented. The trial court in *Rhode* had admitted medical bills from the plaintiff's chiropractor, even though the defendants were unable to cross-examine him because he had "asserted his fifth amendment privilege in response to all questions posed to him at his deposition . . . ." Id., 734. This court cited *Struckman* for the proposition that there is an "absolute common-law right to cross-examination in a civil case." (Internal quotation marks omitted.) Id., 743. Because the defendants were unable to exercise this right at trial or in a deposition, this court held that the medical bills should not have been admitted. Id., 744; see also *Milliun* v. *New Milford Hospital*, 310 Conn. 711, 726, 80 A.3d 887 (2013) (physician's expert opinion is admissible pursuant to § 52-174 (b), "as long as the defendant is afforded an opportunity to cross-examine the author of the report"); *Milliun* v. *New Milford Hospital*, 129 Conn. App. 81, 106, 20 A.3d 36 (2011) ("*Rhode* stands for the proposition that the opportunity to cross-examine an expert is a necessary procedural predicate to the admissibility of reports and

records pursuant to § 52-174 (b)"), aff'd, 310 Conn. 711, 80 A.3d 887 (2013).

We conclude that this court's decision in *Rhode* v. *Milla*, supra, 287 Conn. 731, overstated the holding of *Struckman* v. *Burns*, 205 Conn. 542. As we have explained, the court in *Struckman* expressly concluded that, as a general rule, "medical opinions . . . relevant to diagnosis . . . may be admitted into evidence without the testimony of the persons who made the entries . . . and . . . this procedure does not violate a defendant's right of cross-examination." (Citation omitted.) *Struckman* v. *Burns*, supra, 550–51. Moreover, the defendant in *Struckman* did not challenge the proposition that medical records are admissible pursuant to § 53-174 (b) if they are prepared in the ordinary course of business, that is, for the purpose of diagnosing, caring for and treating the plaintiff. It was only because the defendant in *Struckman* contended that the medical reports at issue were *not* created in the ordinary course of business, but for use in the litigation, that this court assumed, without deciding, that the ordinary rule allowing the admission of medical records without an opportunity for cross-examination would violate the defendants' due process rights. See id., 551–52.

This court's assumption in *Struckman* that there is a distinction between medical records prepared for use in diagnosis, care and treatment, and those records prepared for use in litigation finds support in this court's decision in *D'Amato* v. *Johnston*, supra, 140 Conn. 54, which the court in *Struckman* cited. See *Struckman* v. *Burns*, supra, 205 Conn. 549–50. In *D'Amato*, this court held that there is "a distinction between entries [that] contain information pertinent to and in aid of the conduct of the real business of the concern keeping the record [which are admissible as business records, even if the defendant had no opportunity to cross-examine the author] and entries [that] are not pertinent to or in aid of that business." *D'Amato* v. *Johnston*, supra, 60–61. This court observed that "[t]he real business of a hospital is the care and treatment of sick and injured persons. It is not to collect and preserve information for use in litigation. Accordingly, even though it might be the custom of a hospital to include in its records information relating to questions of liability for injuries [that] had been sustained by its patients, such entries . . . would not be made admissible by the statute [allowing admission of business records] unless they also contained information having a bearing on diagnosis or treatment." Id., 61.

We recognize that, in *Struckman*, this court made reference to the "absolute" common-law right to cross-examination. (Internal quotation marks omitted.) *Struckman* v. *Burns*, supra, 205 Conn. 549; see also *Gordon* v. *Indusco Management Corp.*, 164 Conn. 262, 271, 320 A.2d 811 (1973) ("[t]he right of cross-examina-

tion is not a privilege but is an absolute right and if one is deprived of a complete cross-examination he has a right to have the direct testimony stricken"); *Fahey* v. *Clark*, 125 Conn. 44, 47, 3 A.2d 313 (1938) ("[a] fair and full cross-examination of a witness upon the subjects of his examination in chief is the absolute right, and not the mere privilege, of the party against whom he is called, and a denial of this right is a prejudicial and fatal error" (internal quotation marks omitted)). Contra *State* v. *Jordan*, 305 Conn. 1, 27, 44 A.3d 794 (2012) ("[t]he defendant's right to cross-examine a witness . . . is not absolute" (internal quotation marks omitted)). It is clear, however, that *Struckman* itself recognized that the right to cross-examination is not absolute in the sense that a party *always*, and under *all* circumstances, has the right. Rather, evidence is admissible without providing an opportunity for cross-examination, when, as with the business records exception to the hearsay rule, the presumption of reliability is not undermined by other circumstances. See *Struckman* v. *Burns*, supra, 551–52 (medical opinions pertaining to diagnosis may be admitted without providing opportunity for cross-examination); see also *Jenzack Partners, LLC* v. *Stoneridge Associates, LLC*, supra, 334 Conn. 390 ("[t]he initial rationale for the [business records] exception was that . . . business records [are] trustworthy because their creators had relied on the records for business purposes" (internal quotation marks omitted)); *State* v. *Cooper*, 182 Conn. 207, 213, 438 A.2d 418 (1980) (right to cross-examination "is a substantial legal right [that] may not be abrogated or abridged at the discretion of the court *to the prejudice of the cross-examining party*" (emphasis added; internal quotation marks omitted)); cf. Conn. Code Evid. § 8-3 (enumerating exceptions to hearsay rule even though declarant is available). To the extent that *Rhode* v. *Milla*, supra, 287 Conn. 731, and *Milliun* v. *New Milford Hospital*, supra, 310 Conn. 711, suggest that an opportunity for cross-examination is an absolute prerequisite for the admission of medical records prepared for use in the diagnosis, care and treatment of a patient, we now disavow that proposition. We conclude, therefore, that the Appellate Court incorrectly determined that the medical records of the plaintiff in the present case were inadmissible under § 52-174 (b) because the defendant did not have an opportunity to cross-examine Vitale.

The defendant contends that the final report was not admissible under § 52-174 (b) because it contained her expert opinions on causation and permanency, and was not prepared in the ordinary course of business, namely, for medical diagnosis and treatment, but instead for use in this litigation. See *D'Amato* v. *Johnston*, supra, 140 Conn. 61 (medical records "relating to questions of liability for injuries [that] had been sustained by [a patient] . . . would not be made admissible by the statute [allowing admission of business records] unless

they also contained information having a bearing on diagnosis or treatment"); cf. *Jefferson Garden Associates* v. *Greene*, 202 Conn. 128, 140–41, 520 A.2d 173 (1987) ("documents prepared for litigation are excluded, not on a per se basis, but rather upon an inquiry into whether such documents bear circumstantial indicia of lack of trustworthiness").[12] The defendant, however, made no claim and presented no evidence to the trial court that the final report was prepared in contemplation of litigation and not for use in the care and treatment of the plaintiff.[13] Although the defendant contended at oral argument before the trial court on its motion to preclude the final report that the report contained Vitale's opinion, as this court recognized in *D'Amato*, virtually *all* medical reports contain the opinion of the author, yet they are generally admissible. See *D'Amato* v. *Johnston*, supra, 58 ("[t]he making of a diagnosis certainly involves the formulation of an expert opinion, and yet we have said that the entry in a hospital record setting forth the diagnosis of a patient's illness is an entry [that] is admissible" under statute allowing admission of business records). The fact that the final report contained Vitale's opinion on causation and permanency, which are issues that typically require expert testimony, fails to establish, in and of itself, that the report was not prepared for use in the care and treatment of the plaintiff. In any event, the defendant did not claim in the proceedings before the trial court that medical records containing opinions on causation and permanency are inadmissible per se under § 52-174 (b) if there is no opportunity for cross-examination. Even putting aside the preservation issues that arise from the defendant's failure to make a distinct argument at trial that the final report was inadmissible under § 52-174 (b) on the ground that it was prepared exclusively for use in this litigation,[14] we conclude that the record simply does not support that particular claim.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

* June 29, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 52-174 (b) provides: "In all actions for the recovery of damages for personal injuries or death, pending on October 1, 1977, or brought thereafter, and in all court proceedings in family relations matters, as defined in section 46b-1, or in the Family Support Magistrate Division, pending on October 1, 1998, or brought thereafter, and in all other civil actions pending on October 1, 2001, or brought thereafter, any party offering in evidence a signed report and bill for treatment of any treating physician or physician assistant, dentist, chiropractor, naturopath, physical therapist, podiatrist, psychologist, social worker, mental health professional, an emergency medical technician, optometrist or advanced practice registered nurse, may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of such treating physician, physician assistant, dentist, chiropractor, naturopath, physical therapist, podiatrist, psychologist, social worker, mental health professional, emergency medical technician, optometrist or advanced practice registered nurse and that the report and bill were made in the ordinary course of

business. The use of any such report or bill in lieu of the testimony of such treating physician, physician assistant, dentist, chiropractor, naturopath, physical therapist, podiatrist, psychologist, social worker, mental health professional, emergency medical technician, optometrist or advanced practice registered nurse shall not give rise to any adverse inference concerning the testimony or lack of testimony of such treating physician, physician assistant, dentist, chiropractor, naturopath, physical therapist, podiatrist, psychologist, social worker, mental health professional, emergency medical technician, optometrist or advanced practice registered nurse. In any action to which this subsection applies, the total amount of any bill generated by such physician, physician assistant, dentist, chiropractor, naturopath, physical therapist, podiatrist, psychologist, social worker, mental health professional, emergency medical technician, optometrist or advanced practice registered nurse shall be admissible in evidence on the issue of the cost of reasonable and necessary medical care. The calculation of the total amount of the bill shall not be reduced because such physician, physician assistant, dentist, chiropractor, naturopath, physical therapist, podiatrist, psychologist, social worker, mental health professional, emergency medical technician, optometrist or advanced practice registered nurse accepts less than the total amount of the bill or because an insurer pays less than the total amount of the bill.''

[2] We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that the plaintiff's Veterans Administration hospital records improperly were admitted into evidence pursuant to . . . § 52-174 (b)?" *DeMaria* v. *Bridgeport*, 333 Conn. 916, 217 A.3d 1 (2019).

[3] "General Statutes § 13a-149 provides in relevant part: 'Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. . . .' " *DeMaria* v. *Bridgeport*, supra, 190 Conn. App. 452 n.2.

[4] Title 38 of the 2017 edition of the Code of Federal Regulations, § 14.808 (a), provides in relevant part: "[Department of Veterans Affairs] personnel shall not provide, with or without compensation, opinion or expert testimony in any legal proceedings concerning official [Department of Veterans Affairs] information, subjects or activities, except on behalf of the United States or a party represented by the United States Department of Justice. Upon a showing by the requester . . . that, in light of the factors listed in § 14.804, there are exceptional circumstances and that the anticipated testimony will not be adverse to the interests of the Department of Veterans Affairs or to the United States, the responsible [Department of Veterans Affairs] official designated in § 14-807 (b) may, in writing, grant special authorization for [Department of Veterans Affairs] personnel to appear and testify. . . .''

[5] After the appeal was filed, we granted permission to the Connecticut Veterans Legal Center to file an amicus curiae brief in support of the plaintiff's position.

[6] The plaintiff also contends that the defendant cannot claim that its due process rights were violated by the admission of his medical records because the defendant failed to exhaust all available methods to secure Vitale's testimony. The plaintiff did not raise this claim in either the trial court or the Appellate Court; indeed, he conceded in his Appellate Court brief that Vitale "was beyond the effective subpoena power of the trial court." *DeMaria* v. *Bridgeport*, Conn. Appellate Court Briefs & Appendices, January Term, 2019, Plaintiff's Brief p. 5. Accordingly, we decline to review the claim. See, e.g., *State* v. *Fauci*, 282 Conn. 23, 26 n.1, 917 A.2d 978 (2007).

[7] The defendant did not clearly identify in its brief to this court the specific record that it claims was inadmissible. It became clear at oral argument before this court, however, that the defendant objected to the admission of the final report authored by Vitale.

[8] General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such

persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . .”

[9] Section 8-4 of the Connecticut Code of Evidence provides in relevant part: “(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

“(b) The writing or record shall not be rendered inadmissible by (1) a party’s failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party’s failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . .”

[10] We recognize that the criteria for admissibility pursuant to §§ 52-174 (b) and 52-180 differ in some respects. For example, it is presumed under § 52-174 (b) that medical records are prepared in the ordinary course of business, whereas, under § 52-180 (a), the trial judge must make a finding to that effect. To the extent the statutes differ, the more specific statute, § 52-174 (b), applies.

[11] The court in *D’Amato* was construing General Statutes (1949 Rev.) § 7903, the predecessor provision to § 52-180. See *D’Amato* v. *Johnston*, 140 Conn. 54, 56–57 n.1, 62, 97 A.2d 893 (1953).

[12] In *Struckman* v. *Burns*, supra, 205 Conn. 551, this court assumed, without deciding, that § 52-174 (b) would be *unconstitutional* as applied to medical records that are prepared for use in litigation. This constitutional assumption, insofar as it is predicated on § 52-174 (b), is inconsistent with this court’s holding in *D’Amato* that medical records prepared exclusively for use in litigation simply *do not constitute* “*business entries*” subject to that statute allowing the admission of business records because health care providers are not in the business of preparing such records. (Emphasis added.) *D’Amato* v. *Johnston*, supra, 140 Conn. 57; see id., 61 (“The real business of a hospital is the care and treatment of sick and injured persons. It is not to collect and preserve information for use in litigation.”)

[13] Instead, the defendant contended in its motion in limine that the final report was inadmissible because it had no way of knowing whether Vitale, a physicians assistant, was competent to render an opinion on the permanency of the plaintiff’s hand injury, which is a claim that it does not renew on appeal. It also argued generally that all of Vitale’s “treatment records, treatment reports, findings, conclusions, and medical opinions . . . that reference any medical treatment, diagnosis, prognosis, or permanent injury” suffered by the plaintiff were inadmissible because the defendant was unable to cross-examine Vitale, whom the plaintiff had disclosed as an expert witness. The defendant did not specifically refer to the final report or contend that any of the records had been prepared for use in this litigation.

[14] See *Jefferson Garden Associates* v. *Greene*, supra, 202 Conn. 140 (declining to review defendant’s claim that certain documents were inadmissible under § 52-180 because they were prepared for use in litigation when defendant had objected to admission of documents only on ground that witness lacked competency to offer documents into evidence).